**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARY HAYWOOD,** | ) | |
| **MARTHA LEWIS,** | ) | |
| **ANNIE STUBENFIELD, and** | ) | |
| **A. D. LINDSEY, on behalf of** | ) | |
| **themselves and all** | ) | |
| **others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 1:15-CV-8317** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CHICAGO HOUSING AUTHORITY,** | ) | |
| an Illinois municipal corporation, | ) | **Jury Trial Demanded** |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

### INTRODUCTION

1.       In 1969 the United States Congress enacted legislation to ensure that low-income public housing residents pay no more than a certain percentage of their income toward rent, which includes reasonable utility expenses.  42 U.S.C. § 1437(a)(a)(1); 24 C.F.R. § 5.603, § 965.501 and § 960.253(c)(3).  This federal law and implementing regulations prohibit the Chicago Housing Authority ("CHA") from requiring public housing residents to pay more than 30% of their income towards rent and utilities.  *Id*. In spite of this federal mandate, CHA has overcharged its low-income public housing residents for rent and utilities, forcing them to make even more difficult choices about how to spread their limited financial resources.

2.       The CHA has failed, for nearly a decade, to meet its legal obligation to adjust and update its resident utility allowances.  Even worse, CHA has evicted some public housing

residents for not paying their utilities while at the same time providing residents insufficient money to pay those bills in the first place.

3.      Without intervention by this court, CHA public housing residents will continue to pay more than 30% of their income towards housing and utility costs and be in jeopardy of losing their housing all because the CHA has repeatedly and egregiously failed to meet its statutory and contractual obligations to subsidize the reasonable utility costs of its low-income families.

4.      Plaintiffs include a proposed class of former CHA residents who were harmed by CHA's unlawful actions and a proposed class of current CHA public housing residents who are faced with an imminent threat of irreparable harm as a result of the CHA's ongoing unlawful actions.  Plaintiffs seek declaratory and injunctive relief, damages, payment of past utility and rental costs, including prejudgment interest, attorneys' fees, and costs.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (color of state law), and 1367 (supplemental jurisdiction).

6.      Plaintiffs seek declaratory and injunctive relief against the CHA, pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because CHA violated federal law in this judicial district.

## PARTIES

8.      Plaintiff Mary Haywood is an 80-year-old disabled resident of CHA public housing.

9.      Plaintiff Martha Lewis is a 60-year-old disabled resident of CHA public housing.

10.     Plaintiff Annie Stubenfield is a 60-year-old resident of CHA public housing.

11.     Plaintiff A. D. Lindsey is a 62-year-old disabled resident of CHA public housing.

12.     Defendant Chicago Housing Authority is an Illinois municipal corporation, created and existing under the Illinois Housing Authorities Act, 310 Ill. Comp. Stat. 10/1 *et seq.* CHA is a public housing agency within the meaning of 42 U.S.C. § 1437.

## FACTUAL ALLEGATIONS

### Plaintiffs

13.     Plaintiff Mary Haywood has been a resident of CHA for the past 16 years. Ms. Haywood resides in a one-bedroom public housing unit at CHA's Albany Terrace development, located at 3030 W. 21st Street, Apartment 1201.

14.     Since 1999, Ms. Haywood has been required to pay for her electricity in addition to her monthly rent.  Ms. Haywood's utility allowance from CHA is currently $24 for a one-bedroom unit and has remained that amount since at least 2007.

15.     Ms. Haywood's monthly rent to CHA is currently $224, after applying an adjustment for a service she provides to the building as a member of the "tenant patrol" and her monthly utility allowance.

16.     This rent payment, combined with CHA's utility allowance, should have totaled not more than 30% of her adjusted income, the maximum amount that CHA can charge for rent, including utilities.  However, because CHA has failed to adequately review and adjust its utility allowance, Ms. Haywood has been paying and continues to pay CHA more than 30% of her adjusted monthly income for rent.

17.     Plaintiff Martha Lewis has been a resident of CHA public housing since she was six years old.  Since 2008, she has lived at 1618 W. Juneway Terrace, part of CHA's Northeast Scattered Site public housing development.

18.     Since 2008, Ms. Lewis has been required to pay for her electricity and cooking gas expenses in addition to her monthly rent.  Since 2008, Ms. Lewis' utility allowance has been $51 for a two-bedroom unit.

19.     Ms. Lewis' monthly rent to the CHA is $56, after applying an adjustment for her utility allowance. This rent payment, combined with CHA's utility allowance, should have totaled not more than 30% of her adjusted income, the maximum amount that CHA can charge for rent, including utilities.  However, because CHA has failed to adequately review and adjust her utility allowance, Ms. Lewis has been paying and continues to pay CHA more than 30% of her adjusted monthly income for rent.

20.     Plaintiff Annie Stubenfield has lived in CHA public housing for the past 47 years. She has lived with two of her children at 716 E. 38th Place in a public housing unit at the Oakwood Shores development since 2005.

21.     Since 2005, Ms. Stubenfield has been required to pay for her electricity and heating gas expenses in addition to her monthly rent.  Since 2005, Ms. Stubenfield's utility allowance has been $168 for a four-bedroom unit.

22.     Ms. Stubenfield's monthly rent is $86, after applying an adjustment for her utility allowance. This rent payment, combined with CHA's utility allowance, should have totaled not more than 30% of her adjusted income, the maximum amount that CHA can charge for rent, including utilities.  However, because CHA has failed to adequately review and adjust her utility

4

allowance, Ms. Stubenfield has been paying and continues to pay CHA more than 30% of her adjusted income for rent.

23.     Plaintiff A. D. Lindsey has lived in CHA public housing for the past 5 years.  He has lived with his wife at 3700 W. Congress Parkway in a one-bedroom public housing unit at Irene McCoy Gaines Apartments since 2010.

24.     Since 2010, Mr. Lindsey has been required to pay for his electricity expenses in addition to his monthly rent.  Since 2010, Mr. Lindsey's utility allowance has been $24 for a one-bedroom unit.

25.     Mr. Lindsey's monthly rent is $381, after applying an adjustment for his utility allowance. This rent payment, combined with CHA's utility allowance, should have totaled not more than 30% of his family's adjusted income, the maximum amount that CHA can charge for rent, including utilities.  However, because CHA has failed to adequately review and adjust his utility allowance, Mr. Lindsey has been paying and continues to pay CHA more than 30% of his family's adjusted income for rent.

26.     At all times relevant to this Complaint, Plaintiffs have materially performed their obligations under their leases with CHA.

**CHA's Policies and Practices Regarding Utility Allowances**

27.     CHA operates over 21,000 units of public housing in the City of Chicago, Illinois that are subsidized by HUD and subject to federal statutes and regulations, including 42 U.S.C. §1437a and its implementing regulations.

28.     In 1996 CHA conducted a utility analysis and established allowances for its public housing units then in existence.

29.     On information and belief, 1996 was the last time the CHA conducted a utility allowance analysis for its public housing program.

30.     CHA revised its utility allowances for electricity and natural gas for public housing residents in 1997, 1998, 2000, 2004, 2005, and 2007.

31.     Since September 2007, electricity and natural gas rates have increased for all class members.  On several instances since that time, rates have increased at least 10% month over month.

32.     Since 2007, CHA has never increased its utility allowances for public housing residents, despite increases in electric and natural gas rates greater than 10%.

33.     In 2007, when CHA last revised its utility allowance schedule, CHA failed to provide its residents with notice of, and an opportunity to comment on, the proposed changes as required by 24 C.F.R. § 965.502(c).

34.     CHA's actions threaten Plaintiffs and putative class members with imminent and irreparable injury, including being forced to go without other necessities in order to pay utilities, or worse, potential eviction or resulting homelessness for failure to maintain utilities.

35.     Plaintiffs have no adequate remedy at law.

36.     The actions and inactions of Defendants have been willful, wanton, intentional, and in the reckless disregard of Plaintiffs' and putative class members' legal rights.

## LEGAL FRAMEWORK

37.     The United States Housing Act prohibits a public housing agency from charging its residents more than 30% of their adjusted income for rent, which includes the costs of utilities.  42 U.S.C. § 1437a(a)(1); 24 C.F.R. § 960.253.

38.     Public housing authorities are required to pay for these reasonable utility expenses by providing a "utility allowance" to tenants who directly pay their own utilities.  24 C.F.R. § 965.501 *et. seq.*  The CHA must provide this allowance to all of its public housing residents, generally in the form of a credit against the amount of the rent a tenant pays the CHA each month.  The utility allowance is calculated "to approximate a reasonable consumption of utilities by an energy-conservative household of modest circumstances … ."  24 C.F.R. § 965.505(a); *see also* 24 C.F.R. § 5.603.

39.     Public housing authorities such as CHA must establish utility allowances for all check metered utilities furnished by CHA as well as allowances for all utilities purchased directly by residents from the utilities suppliers.  24 C.F.R. § 965.502(a).

40.     Public housing authorities such as CHA must maintain a record that documents the basis on which allowances and scheduled surcharges, and revisions thereof, are established and revised.  A public housing authority must make these records available for inspection by residents.  24 C.F.R. § 965.502(b).

41.     To account for fluctuating utility rates, CHA is required to review its utility allowance at least annually, and must additionally adjust its allowance any time there is a 10% change in the utility rate upon which the allowance was based.  24 C.F.R. §  965.507.

42.     Pursuant to 42 U.S.C. 1437c, a public housing authority must enter into an Annual Contributions Contract ("ACC") with the United States Department of Housing and Urban Development ("HUD") to receive annual contributions to subsidize the cost of operating and managing public housing.  42 U.S.C. § 1437c.  Under the ACC between Defendant CHA and HUD, HUD has made and continues to make annual contributions to subsidize the cost of operating and managing public housing.  *Id.*

7

43.     Section 5 of the standard ACC requires a public housing authority to operate in accordance with all applicable HUD statutes and regulations including those promulgated by HUD at Title 24 of the Code of Federal Regulations, which are also incorporated into the ACC. *See also* 42 U.S.C. § 1437c and g. The ACC also requires the housing authority to ensure that its contractors and subcontractors comply with such requirements if they are engaged in the development or operation of a project covered under this ACC. *Id.* On information and belief, CHA's ACC requires it to ensure that its contractors and subcontractors comply with such requirements if they are engaged in the development or operation of a project covered under the CHA's ACC.

44.     A public housing authority's lease must identify which utilities the tenant will pay and which utilities the housing authority will supply without additional cost to the tenant. 24 C.F.R § 966.4(iv). At some CHA developments, CHA pays for all utilities and tenants receive no utility allowance. At other developments, CHA pays for some or none of the utilities, and the tenant pays all of the utilities out of pocket.

45.     CHA's public housing residential lease agreement states that "[t]he rent amount shall be determined by the CHA in compliance with United States Department of Housing and Urban Development (HUD) regulations and the CHA approved Rent Policy." CHA FY 2015 Residential Lease Agreement at p. 5, §1, ¶ (b), attached as Exhibit A.

46.     CHA's lease states that, if the resident pays for utilities or appliances, the CHA shall provide the resident with a utility allowance on a monthly basis and the resident bears the responsibility to maintain utilities connected in the unit by making payments directly to the utility provider. *Id.* at p. 4, ¶ 9. The lease goes onto state that "[t]he allowance shall be enough to pay for a reasonable use of utilities by an energy conservative household of modest

circumstances consistent with the requirements of a safe, sanitary, and healthy living environment." *Id.*

47.     CHA's lease prescribes that utility allowances are factored into the resident's rent calculation when the resident pays utilities directly to the utility company. *Id.* at 6, §2, ¶ (c)(1)(a). When the rent calculation results in a negative amount after subtracting the utility allowance, the lease requires CHA to make utility reimbursement payments directly to the utility provider on the resident's behalf. *Id.* at 6, §2, ¶ (c)(1)(b).

48.     CHA's lease requires the CHA to return to the resident any rent that resulted from CHA's rent calculation error, providing the resident with an option to receive a check or account credit. *Id.* at 9, §4, ¶ (g).

49.     CHA's lease also requires it "[t]o comply with the requirements of applicable city building codes, housing codes, and HUD regulations materially affecting health and safety." *Id.* at 19, §11, ¶ (b).

50.     On information and belief, the CHA residential leases in the preceding 10 years are materially the same with respect to the above cited provisions.

## **CLASS ACTION ALLEGATIONS**

51.     Named Plaintiffs Mary Haywood, Martha Lewis, Annie Stubenfield, and A. D. Lindsey bring this action on behalf of themselves and all others similarly situated pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Rule 23(b)(3) class is defined as, "All current and former residents of CHA-owned public housing units who – in the past ten years – were or are entitled to utility allowances." The proposed Rule 23(b)(2) class is defined as, "All current residents of CHA-owned public housing units who are entitled to a utility allowance."

9

52.     **Numerosity.** The classes are so numerous that joinder of all of their members is impracticable.  Upon information and belief, the classes are comprised of more than 10,000 individuals.  The putative class members are unlikely to press their claims on an individual basis because as residents of public housing, all putative class members have limited incomes, and the value of their individual claims is modest.

53.     **Commonality and Predominance.**  Common questions of fact and law predominate over questions affecting individual class members.  Questions of law and fact common to classes include

a)      whether CHA provided sufficient utility allowances as required by 42 U.S.C. § 1437a, thereby requiring its tenants to pay more in rent than allowed by federal statute;

b)      whether CHA made appropriate annual reviews and adjustments of utility allowances as required by 42 U.S.C. § 1437(a) and 24 C.F.R. § 963.507(a);

c)      whether CHA made appropriate interim adjustments to tenants' utility allowances as required by 42 U.S.C. § 1437(a) and 24 C.F.R. § 963.507(b); and

d)      whether CHA breached its public housing lease with class members by not providing a utility allowance that was sufficient to pay for a reasonable use of utilities by an energy conservative household.

54.     **Typicality and Adequacy.** The Plaintiffs' claims are typical of the classes as a whole.  All of the Plaintiffs' claims arise from the same unlawful practices: CHA's failure to update its utility allowances in violation of the United States Housing Act, 42 U.S.C. § 1437(a), and its implementing regulations, and the CHA Residential Lease Agreement.  The Plaintiffs do not present claims that are unique to themselves and instead bring claims typical to the class

10

members. Proposed class representatives and class counsel will fairly and adequately protect the interests of the classes as a whole. Plaintiffs do not have any interests antagonistic to those of other class members. By filing this action, Plaintiffs have displayed an interest in vindicating their rights, as well as the claims of others who are similarly situated. Plaintiffs are represented by experienced counsel.

55. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it will:

a. avoid the heavy burden of multiple, duplicative suits;

b. avoid the virtually impossible task of getting all class members to intervene as party-plaintiffs in this action;

c. allow the Court, upon adjudication of defendant's liability, to determine the claims of all class members; and

d. allow the Court to enter appropriate final monetary relief with respect to the classes as a whole.

56. **Injunctive and Declaratory Relief**. CHA has acted or refused to act on grounds that apply generally to the Rule 23(b)(2) class as a whole, so that final injunctive or declaratory relief is appropriate respecting the class as a whole. More specifically, CHA has refused to update utility allowances for all of its public housing residents since 2007.

## **LEGAL CLAIMS**

### **COUNT I – CHARGING RENT ABOVE THE STATUTORY CEILING – 42 U.S.C. § 1437a & 24 C.F.R. §§§ 960.253(a), 965.501, & 5.603**

57. Plaintiffs re-allege paragraphs 1 to 56 of this Complaint and incorporate them herein.

58. Defendant CHA is a "person" within the meaning of 42 U.S.C. § 1983, and its actions described herein were taken under color of state law.

11

59.     Defendants violated 42 U.S.C. § 1437a and its implementing regulations, by failing to provide its tenants with a sufficient utility allowance and thereby charging tenants in excess of federal statutory ceilings for rent.

## COUNT II – FAILURE TO CONDUCT ANNUAL REVIEWS – 42 U.S.C. § 1437(a) & 24 C.F.R. § 965.507(a)

60.     Plaintiffs re-allege paragraphs 1 to 56 of this Complaint and incorporate them herein.

61.     Defendant CHA is a "person" within the meaning of 42 U.S.C. § 1983, and its actions described herein were taken under color of state law.

62.     Defendants violated 42 U.S.C. § 1437a and its implementing regulations by failing to conduct annual reviews of its utility allowances.

## COUNT III – FAILURE TO PROVIDE INTERIM ADUSTMENTS – 42 U.S.C. § 1437(a) & 24 C.F.R. § 965.507(b)

63.     Plaintiffs re-allege paragraphs 1 to 56 of this Complaint and incorporate them herein.

64.     Defendant CHA is a "person" within the meaning of 42 U.S.C. § 1983, and its actions described herein were taken under color of state law.

65.     Defendants violated 42 U.S.C. § 1437a and its implementing regulations by failing to provide interim adjustments of utility allowances when necessitated by changes in utility rates that were 10% or greater, month over month.

## STATE LAW BREACH OF CONTRACT CLAIM
## COUNT IV – BREACH OF CHA'S RESIDENTIAL LEASE

66.     Plaintiffs re-allege paragraphs 1 to 56 of this Complaint and incorporate them herein.

67. Defendant CHA breached its duties under its respective leases with each of its tenant households in that since at least 2007, CHA failed to charge rent in an amount that is accordance with applicable federal implementing regulations for the United States Housing Act as required by its lease. Residential lease at p. 5, § 1, ¶ (a). Since at least 2007, Defendant CHA also breached its duty to establish a utility allowance that shall be enough to pay for a reasonable use of utilities by an energy conservative household of modest circumstances consistent with the requirements of a safe, sanitary, a*nd* healthy living environment. Residential Lease at p. 4, ¶ 9.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Declare that the acts and omissions of the Defendants, as set forth above, violate the United States Housing Act of 1937, 42 U.S.C. § 1437a and its implementing regulations;

b. Declare that the acts and omissions of the Defendants, as set forth above, violate the residential public housing lease;

c. Enter a preliminary and permanent injunction, without bond or upon a nominal bond, enjoining Defendants from terminating the assistance of any public housing tenant for the non-payment of utilities;

d. Enter a preliminary and permanent injunction directing Defendants to make retroactive adjustments of its utility allowances for all public housing tenants to reflect increases of utility rates, retroactive to September 2007;

e. Enter an order requiring CHA to specifically perform its obligations under its residential lease;

f. Award compensatory damages and prejudgment interest in an amount to be proven at trial;

g.    Enter an order requiring Defendants to pay Plaintiffs' reasonable costs and

attorneys' fees for the prosecution of this action;

h.    Certify the Rule 23(b)(3) and Rule 23(b)(2) classes defined above and appoint the

undersigned attorneys as Class Counsel; and

i.    Grant Plaintiffs such further relief as this Court deems just and proper.

## Jury Demand

Plaintiff demands trial by jury on all issues as to which a jury trial is available.

DATED:  September 22, 2015

By:    /s/ Christopher J. Wilmes
Attorneys for Plaintiffs,

Matthew J. Piers
Christopher J. Wilmes
HUGHES, SOCOL, PIERS, RESNICK, & DYM, LTD.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
312-580-0100

Katherine E. Walz
Jeremy P. Bergstrom
SARGENT SHRIVER NATIONAL CENTER ON POVERTY LAW
50 East Washington Street, Suite 500
Chicago, Illinois  60602-2919
312-263-3830

*Attorneys for Plaintiffs*